986 So.2d 843 (2008)
STATE of Louisiana, Appellee
v.
Steven Michael PRESSON, Appellant.
No. 43,215-KA.
Court of Appeal of Louisiana, Second Circuit.
June 4, 2008.
*845 Peggy J. Sullivan, Louisiana Appellate Project, Monroe, for Appellant.
Paul J. Carmouche, District Attorney, Tommy J. Johnson, Karelia R. Stewart, Assistant District Attorneys, for Appellee.
Before CARAWAY, PEATROSS and MOORE, JJ.
CARAWAY, J.
The defendant was convicted of operating a motor vehicle while intoxicated, fourth offense. He was ultimately sentenced to twelve years at hard labor, to run consecutively with another sentence being served for a prior conviction. For the following reasons, defendant's conviction is affirmed, and the sentence is amended.

Facts
At approximately 5:00 p.m. on November 13, 2006, Clay Morgan, a security officer at Willis-Knighton Hospital ("WK"), received a report of possible automobile theft in the hospital parking lot. Morgan and his acting supervisor, Jerry Johnson, arrived at the parking lot at the same time and approached the defendant, Steven Michael Presson ("Presson"). Presson explained that he locked his keys in the car. Johnson smelled alcohol on Presson's breath and inquired about how much alcohol he had consumed. Although the details of their conversation are not known,[1] Johnson advised Presson not to drive due to his suspected intoxication. Once the security officers unlocked the defendant's vehicle, they had the car driven to the north hospital parking lot by a third party, and left the scene.
Presson admitted at trial that Johnson informed him that he smelled alcohol on his breath and told him not to drive his car. Nevertheless, by 5:20 p.m. and in spite of the explicit warning against driving, Morgan observed Presson drive away in the vehicle. Morgan immediately notified *846 Johnson, who stated he would contact the local police and begin following Presson.
Shreveport Police Department Officer Scott Deen was on patrol when he received a dispatch concerning a possible DWI. Officer Deen was told that the WK security officer (Johnson) was following the suspect (Presson) and Johnson was giving directions while driving behind the defendant. These directions were relayed to the responding officers, including Officer Deen. The police were ultimately directed to the Circle K convenience store at the corner of Fairfield Avenue and Jordan Street.
When Officer Deen arrived at Circle K at 5:30 p.m., Presson, Johnson, and other police officers were already there. Presson was outside of his car, which was parked in the Circle K lot. Officer Deen, a police force veteran experienced in DWI field sobriety testing, approached Presson. He also detected the odor of alcohol on defendant's breath. After he was Mirandized,[2] Presson submitted to the standard field sobriety tests.
Presson was asked to recite the alphabet. Officer Deen noted his speech was slurred and "thick tongued," indicators of intoxication. Next, he was asked to hold one foot up six inches above the ground for thirty seconds. Presson did not mention any condition he suffered from that could cause poor performance on this particular test. Within a few seconds, defendant placed his foot back down on the ground three times and also had to use his arms for balance, further indicating he was intoxicated. Officer Deen performed the HGN (horizontal gaze nystagmus) test, but no testimony was elicited at trial as to Presson's actual performance on this test.
Officer Deen believed Presson was intoxicated and transported him to the Traffic Unit for additional chemical testing. After defendant was advised of his rights relating to chemical testing, he consented to take the breath test. At 6:12 p.m., the Intoxilyzer 5000 revealed Presson's blood alcohol concentration level was 0.085%.
Presson was charged by bill of information with operating a motor vehicle while intoxicated, fourth offense. During trial, the defendant admitted drinking some alcohol earlier on the day of his arrest, admitted his encounter with the security officers in the WK parking lot, and admitted being told not to drive because of his suspected intoxication. However, he denied that he was intoxicated when he left WK in his car.
Presson testified that he was upset because his mother was ill, and his car had overheated (causing him to pull into Circle K). He drank some Jägermeister and another "quarter of a pint," but only after he had already parked his car at Circle K. He blamed his poor performance on the field sobriety tests on a purported brain injury. Defendant admitted at least three prior DWI convictions during the ten years preceding the instant offense.
The unanimous jury found the defendant guilty as charged. The trial court originally sentenced defendant to fifteen years at hard labor to run concurrently with any other sentence he was then serving. Both parties filed timely motions for reconsideration, and as a result, Presson's sentence was reduced to twelve years at hard labor, to run consecutively to any other sentence Presson was serving, as required by La. R.S. 14:98(E)(4)(b) (Presson had previously received the benefits of suspension of sentence and probation as a *847 DWI fourth offender for his conviction in Suit No. 225,931). This appeal ensued.

Discussion
Presson contends in his first assignment of error that the evidence was insufficient to prove he was guilty beyond a reasonable doubt of driving while intoxicated. He argues that even though his blood alcohol concentration was 0.085% after his arrest, no evidence showed that he operated his car while he was intoxicated. Rather, he argues, the evidence only proved he became legally intoxicated after parking his car at Circle K.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
When circumstantial evidence forms the basis of the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia, supra. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d *848 566, and 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, and 98-0282 (La.6/26/98), 719 So.2d 1048.
La. R.S. 14:98 provides in pertinent part:
A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(a) The operator is under the influence of alcoholic beverages; or
(b) The operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; or

* * *
Thus, the state need only prove to the jury that the defendant was operating a vehicle and that the defendant was under the influence of alcohol. La. R.S. 14:98(A)(1)(a); State v. Minnifield, 31,527 (La.App. 2d Cir. 1/20/99), 727 So.2d 1207, writ denied, 99-0516 (La.6/18/99), 745 So.2d 19. To convict a defendant of driving while intoxicated, fourth offense, the state must also prove that the defendant has had three prior valid convictions, as defined in La. R.S. 14:98(F)(1). State v. Inzina, 31,439 (La.App. 2d Cir.12/9/98), 728 So.2d 458.
This court has noted that the term "operating" is broader than the term "driving." The jurisprudence generally holds that in order to operate a motor vehicle, the defendant must have exercised some control or manipulation over the vehicle, such as steering, backing, or any physical handling of the controls for the purpose of putting the car in motion. State v. Johnson, 580 So.2d 998, 1001 (La. App. 3d Cir.1991); City of Bastrop v. Paxton, 457 So.2d 168 (La.App. 2d Cir.1984). It is not necessary that these actions have any effect on the engine, nor is it essential that the car move in order for the state to prove the element of operation. Id.
An officer must conduct a general observation of the defendant for a period of 15 minutes prior to testing, whereby the defendant shall not have ingested alcohol, alcoholic beverages, regurgitated, vomited or taken anything by mouth. State v. Meredith, 36,483 (La.App. 2d Cir. 12/11/02), 833 So.2d 1125.
Some behavioral manifestations, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. State v. McDonald, 33,013 (La.App. 2d Cir.3/1/00), 754 So.2d 382, 386; State v. Pitre, 532 So.2d 424 (La.App. 1st Cir.1988), writ denied, 538 So.2d 590 (La. 1989). It is not necessary that a conviction for DWI be based upon a blood or breath alcohol test, and the observations of an arresting officer may be sufficient to establish a defendant's guilt. Intoxication is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330 (La.1983); State v. Blackburn, 37,918 (La.App. 2d Cir.1/28/04), 865 So.2d 912; State v. McDonald, supra.
The evidence conclusively established that Presson was intoxicated by the time police arrived at the scene, after defendant was out of his vehicle. There is an irrebuttable presumption of intoxication when a person's blood alcohol concentration level is 0.08% or more. La. R.S. *849 14:98(A)(2); State v. Downer, 460 So.2d 1184 (La.App. 2d Cir.1984), superseded by statute, as recognized by State v. McGuire, 493 So.2d 559 (La.1986). The central issue presented in this appeal is whether defendant was intoxicated while he "operated" his car after leaving the WK parking lot.
The uncontroverted evidence shows that when Presson was initially confronted in the hospital parking lot shortly after 5:00 p.m., there was a strong smell of alcohol on his breath. It is clear that the WK security officers suspected that defendant was already intoxicated at that time, and they specifically instructed him not to drive his car. Nonetheless, Presson disobeyed their instructions and drove away at 5:20 p.m.
Although there is an evidentiary gap due to Johnson's unavailability to testify at trial, other testimony reveals that Johnson was able to follow Presson and remained in contact with police, reporting Presson's trip between WK and Circle K. Once police arrived at Circle K, Presson and Johnson were already parked. The evidence shows that Officer Deen immediately detected alcohol on defendant's breath, defendant's speech was slurred and "thick-tongued," and defendant failed at least two of three standardized field sobriety tests.[3] The police records show that the police officers first came into contact with defendant at 5:30 p.m. Although Presson disputes the exact timing, he nevertheless admitted at trial that the police arrived no more than eight minutes after he first drove into the Circle K parking lot. There was no evidence that defendant consumed any alcohol once police arrived on the scene.
Defendant's version of the events is that he consumed some Jägermeister earlier in the day, prior to his encounter with WK security officers in the hospital parking lot, then drank another "quarter of a pint" after he parked at Circle K, but before the police arrived. The only possible hypothesis of innocence which can be advanced under these facts is that the defendant parked and exited his car at Circle K, and then consumed enough alcoholic beverages to become intoxicated prior to the arrival of police shortly thereafter. Any consumption of alcoholic beverages while parked, but still in the car, would be sufficient to constitute "operation" because he still had control of the vehicle. As explained above, movement of the vehicle is not the determinative factor. See, State v. Johnson, supra. Given the facts of this case, however, this hypothesis is not reasonable. Moreover, the physical evidence and circumstantial evidence demonstrate that Presson's self-serving version of the events could be rejected by the jury.
There was no evidence that any alcoholic beverage containers were found in Presson's car or in the vicinity thereof. There were no eyewitnesses or direct proof that Presson actually drank any alcoholic beverages outside of his vehicle during the brief interval at Circle K. The sequence of events does not support this hypothesis. The evidence suggests that everything happened within a span of ten minutes (i.e., between the time defendant left the WK parking lot until the time he was stopped by police). During this time, according to defendant, he drove from WK to Circle K, at the intersection of Jordan and Fairfield, parked his car, used a pay phone to find a motel room, and then *850 drank enough Jägermeister to affect his speech and impair his performance on the field sobriety tests minutes later. Defendant's version of the events finds little support when the overall timeline of his actions is considered, and on credibility grounds, the jury clearly rejected his testimony.
The only reasonable hypothesis is that defendant was already intoxicated when he drove out of the WK parking lot. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. The evidence was sufficient to support defendant's conviction. This assignment is therefore without merit.
The defendant's second assignment of error argues that his sentence is excessive in that it does take his emotional state at the time of the commission of the offense, or his personal or work history, into consideration. Further, the trial court did not consider his longstanding substance abuse problem.
Because defendant's motion for reconsideration of the July 18, 2007 resentencing was untimely, and merely urges that his sentence is excessive, the defendant is relegated only to a claim of constitutional excessiveness. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La. 1992); State v. Hogan, 480 So.2d 288 (La. 1985); State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
A trial court has broad discretion to sentence. Absent a showing of manifest abuse of that discretion, this court may not set aside a sentence as excessive. State v. Guzman, 99-1528 and 99-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App. 2d Cir.5/12/04), 873 So.2d 939.
At the time of the instant offense, La. R.S. 14:98(E)(1)(a) provided:
Except as otherwise provided in Subparagraph (4)(b) of this Subsection, on a conviction of a fourth or subsequent offense, notwithstanding any other provision of law to the contrary and regardless of whether the fourth offense occurred before or after an earlier conviction, the offender shall be imprisoned with or without hard labor for not less than ten years nor more than thirty years and shall be fined five thousand dollars. Sixty days of the sentence of imprisonment shall be imposed without the benefit of probation, parole, or suspension of sentence. The court, in its discretion, may suspend all or any part of the remainder of the sentence of imprisonment. If any portion of the sentence is suspended, the offender shall be placed on supervised probation with the Department of Public Safety and Corrections, division of probation and parole, for a period of time not to exceed five years, which probation shall commence on the day after the offender's release from custody.
La. R.S. 14:98(E)(4)(b) provided:
If the offender has previously received the benefit of suspension, probation, or parole as a fourth offender, no part of the sentence may be imposed with benefit *851 of suspension of sentence, probation, or parole, and no portion of the sentence shall be imposed concurrently with the remaining balance of any sentence to be served for a prior conviction for any offense.
Prior to imposing sentence, the trial court reviewed the facts of the instant offense and defendant's extensive criminal history, including more than ten prior arrests and/or convictions for DWI. See also, State v. Presson, 39,688 (La.App. 2d Cir.4/6/05), 900 So.2d 240 (in affirming this defendant's prior DWI fourth offense conviction, this court noted that "defendant had a predisposition to commit the offense of driving while intoxicated" based on his prior criminal record). Indeed, he was on probation for DWI, fourth offense, when the instant offense was committed. The record shows that defendant previously underwent evaluation and treatment for substance abuse in Suit No. 225,931 (see, State v. Presson, supra), contrary to his contention here, but that did nothing to preclude his commission of this offense. The trial judge noted that defendant had received a "series of breaks" over the past twenty years, but he has continued to drink and drive. Considering these factors, and notwithstanding defendant's request to consider his emotional state as a mitigating factor, the trial court concluded he was in need of incarceration, that a lesser sentence would deprecate the seriousness of the offense, and that these circumstances were likely to recur based upon his habitual intemperate conduct.
The trial court originally sentenced defendant to fifteen years at hard labor concurrent with any other sentence he was then serving. After reconsideration at the behest of both parties, defendant's sentence was reduced to twelve years at hard labor but made to run consecutively to any other sentence he was serving, as required by La. R.S. 14:98(E)(4)(b) (the record confirms that defendant previously received the benefits of suspension of sentence and probation as a DWI fourth offender.)
Considering this defendant's prior DWI fourth offense conviction (to say nothing of his other DWI multiple offense convictions), and the fact that the defendant was on probation when he committed this offense, the sentence imposed in this case is not constitutionally excessive. See, State v. Masters, 37,967 (La.App. 2d Cir.12/17/03), 862 So.2d 1121. In terms of prison time, the defendant's sentence barely exceeds the statutory minimum mandated in this case. On this record, nothing about this sentence shocks the sense of justice. This assignment is therefore without merit.

Error Patent
A review of the record reveals two errors patent.
The trial court did not impose the twelve year sentence without benefit of probation, parole, or suspension of sentence, as mandated by La. R.S. 14:98(E)(4)(b). The trial court explicitly found that La. R.S. 14:98(E)(4)(b) applied when it ordered the consecutive sentence. La. R.S. 15:301.1 is self-activating, however, and makes the denial of benefits self-operative. See, State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790; State v. Batts, 43,142 (La.App. 2d Cir.4/2/08), 979 So.2d 684.
La. R.S. 14:98(E)(1)(a) provides that upon conviction of DWI, fourth offense, in addition to the prison sentence, the offender "shall be fined five thousand dollars." Here, the trial court did not impose the mandatory fine, resulting in an illegally lenient sentence.
A court of appeal has the authority on its own motion to correct the sentence imposed under La. R.S. 14:98(E)(1)(a) by directing the trial court *852 to add the mandatory fine of $5,000 as required by the statute. State v. Decrevel, 03-0259 (La.5/16/03), 847 So.2d 1197; State v. Williams, supra. Further, an appellate court may amend a defendant's sentence without the necessity of remanding the matter to the trial court. State v. Sermons, 41,746 (La.App. 2d Cir.2/28/07), 953 So.2d 958, writ denied, 07-0789 (La.11/2/07), 966 So.2d 601. The defendant's sentence is therefore amended to impose the statutorily mandated fine of $5,000.

Decree
For the foregoing reasons, the defendant's conviction is affirmed, the sentence is amended to impose the mandatory $5,000 fine and to recognize the denial of benefits in accordance with La. R.S. 14:98(E)(4)(b), and the sentence, as amended, is affirmed.
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED.
NOTES
[1] Jerry Johnson was unavailable to testify at trial due to medical reasons.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
[3] In his brief, defendant makes much of his prior traumatic brain injury, which he alleges may have contributed to his slurred speech and inability to successfully perform the standardized field tests. This contention is irrelevant, however, because defendant's breath test results conclusively established that he was intoxicated.